HOUSE OF CARPETS, INC., ET AL. [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent House of Carpets, Inc. v. Commissioner
Docket Nos. 807-71, 808-71, 809-71, 835-71.
United States Tax Court
T.C. Memo 1973-263; 1973 Tax Ct. Memo LEXIS 24; 32 T.C.M. (CCH) 1239; T.C.M. (RIA) 73263; November 29, 1973, Filed *24 1. Payments made to Betty L. Cooper by Carpets on a note executed by William R. Cooper to Betty, pursuant to a property settlement agreement and divorce, were not made in redemption of stock of Carpets and Service, but were made in discharge of a personal obligation of William. The amounts so paid are taxable to William, the sole stockholder, as dividends. 2. Carpets and Service may not deduct as interest any part of the amounts paid to Betty in discharge of William's obligation to Betty. John P. Dwyer, for the petitioners. Marvin T. Scott, for the respondent. 2 DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: In these consolidated cases respondent determined deficiencies in petitioners' income taxes as follows: Docket No.
Petitioner
Year
Deficiency
807-71
House of Carpets, Inc.
1966
$ 990.55
1967
907.11
1968
786.30
808-71
House of Carpet-Service, Inc.
1966
417.40
1967
423.59
1968
386.31
809-71
William R. Cooper
1965
18,400.53
1966
6,224.55
835-71
William R. Cooper and Betty L. Cooper
1967
1,284.00
The only issues remaining for decision are: (1) Whether payments *25 made by the two corporations to Betty L. Cooper were made in redemption of stock of the corporations or were made in discharge of a personal obligation of William R. Cooper with the result that he has received a dividend distribution; and (2) whether the corporations are entitled to deductions for interest payments on a note executed by William R. Cooper to Betty L. Cooper. FINDINGS OF FACT Certain facts have been stipulated and are found accordingly. House of Carpets, Inc. (sometimes hereinafter referred to as Carpets), petitioner in docket No. 807-71, was incorporated on April 1, 1959, under the laws of New Mexico. 3 Its principal place of business was in Albuquerque, N. Mex., on the date its petition was filed. Carpets filed U.S. corporation income tax returns for the years 1966, 1967, and 1968 with the district director of internal revenue at Albuquerque, N. Mex. House of Carpets-Service, Inc. (sometimes hereinafter referred to as Service), petitioner in docket No. 808-71, was incorporated on October 1, 1960, under the laws of New Mexico. Its principal place of business was in Albuquerque, N. Mex., on the date its petition was filed. Service filed U.S. corporation *26 income tax returns for the years 1966, 1967, and 1968 with the district director of internal revenue at Albuquerque, N. Mex. William R. Cooper (sometimes hereinafter referred to as William), a petitioner in docket Nos. 809-71 and 835-71, filed individual income tax returns for the years 1965 and 1966 with the district director at Albuquerque, N. Mex. Betty L. Cooper (sometimes hereinafter referred to as Betty), is also a petitioner in docket No. 835-71. William and Betty were divorced in 1965 and remarried in 1967. They filed a joint income tax return for the year 1967 with the district director of internal revenue at Albuquerque, N. Mex., and resided in that city when their petitions herein were filed. 4 On April 1, 1959, William and R. W. Adams formed House of Carpets, Inc., each owning a 50-percent interest. During March of 1960 Carpets redeemed the 50-percent stock ownership of R. W. Adams. This redemption was handled directly between Adams and Carpets with Carpets paying Adams for the stock it redeemed. Since March 1960, William has been the sole shareholder of Carpets; however, his stock was at all times subject to the community property rights of Betty. Marital *27 difficulties arose between William and Betty which culminated in Betty instituting divorce proceedings. On June 25, 1965, an absolute divorce was granted by the District Court for Bernalillo County, N. Mex. The order of that court not only granted the divorce but also divided the community property. In that order, the court simply approved a property settlement agreement entered into by William and Betty. Under the settlement and subsequent divorce decree each party was to receive one-half of the total community assets. In the property settlement it was intended that William would retain all of the stock of the two corporations. Betty was ultimately to receive a share equal to one-half of the net value of all the community property. Since the value of the two corporations comprised the greatest part of the community estate and 5 exceeded one-half the value of the entire community estate, it was necessary for some arrangement to be made to permit William to retain one-hundred percent of the two corporations. In order to effectuate an equal division, the parties established an itemized list of all the community assets containing a stated value for each asset. Exhibit A attached *28 to the divorce decree reflects the following determination regarding the value of the community property of William and Betty Cooper: 6 COOPER v. COOPER
Value of House of Carpets, Inc.
$179,926.91
Value of House of Carpets Service, Inc.
51,481.24
Gross Value of Businesses
$231,408.15
* Less Idaho Property Equity
$8,652.77
* Less Los Camas Property Equity
5,173.85
* Less Station Wagon Equity
3,500.00
17,326.62
Net Value of Businesses
$214,081.53
Value of other community property: Idaho Property
8,652.77
Los Camas Property
5,173.85
Station Wagon
3,500.00
Sting Ray
4,000.00
Furniture, Wisconsin
8,500.00
Furniture, apartment (Bill)
3,500.00
Lot 52, Horseshoe Springs
9,800.00
* Lots Pinon Ridge
10,800.00
Raw Land, Sandia Mountains
500.00
Lots 7 and 8, Blk. 12, Unit 3, Gabaldon
500.00
Wisconsin Property
28,186.43
Total Values of Community Gross
$297,194.58
Less Appraisal Fees
1,212.00
Less Community Note to First National Bank
5,100.00
Less Community Debt owed business
9,277.89
Less Federal Income Tax, 1964
3,330.34
Less State Income Tax, 1964
61.02
Net Value of Community
$278,213.33
1/2 Net Community
139,106.66
Property to Mrs. Cooper: Los Camas
$ 5,173.85
Idaho Property
8,652.77
Station Wagon
3,500.00
Sting Ray
4,000.00
Lot 52, Horseshoe Springs
9,800.00
Wisconsin Property
28,186.43
Wisconsin furniture
8,500.00
Lots Pinon Ridge
10,800.00
Lots 7 and 8, Gabaldon
500.00
Raw Land, Sandias
500.00
$ 79,613.05
Total owed by Businesses to Mrs. Cooper
$ 59,493.51
*29 It being considered that the above are all of the community assets and all of the community debts of the parties. 7 In arriving at the total values of community gross in the amount of $297,194.58, as reflected in Exhibit A of the divorce decree, the values of both Carpets and Service were combined with the value of the nonbusiness community assets. This gross value of all the community property was reduced by certain community obligations and the net value of the community assets in the amount of $278,213.33 was established. Betty was to receive property having a value equal to one-half the net value of the community estate, or $139,106.66. In satisfaction of Betty's community half in the amount of $139,106.66, certain assets of Carpets and most of the nonbusiness community assets, which together were valued at $79,613.05, were transferred to Betty. The assets of Carpets listed on Exhibit A of the divorce decree which were transferred to Betty are as follows: Item
Value assigned
Idaho property (equity)
$ 8,652.77
Los Camas Property (equity)
5,173.85
Station wagon
3,500.00
Pinon Ridge lots
10,800.00
Total
$28,126.62
*30 The remaining assets listed on Exhibit A which were transferred to Betty consisted of nonbusiness community property. The combined value of these assets transferred to Betty was only $79,613.05, so $59,493.61 was still owed to her. 8 With regard to the sum of $59,493.61, [2] identified on Exhibit A as "Total owed by Businesses to Mrs. Cooper," paragraph II of the divorce decree stated: Defendant [William R. Cooper] is hereby ordered to pay Plaintiff the sum of $600.00 per month, including interest at the rate of six per cent (6%) per annum, commencing on the 1st day of July, 1965, and the first day of each month thereafter until the total unpaid balance has been paid in full, as shown on Exhibit "A," and being that item on Exhibit "A", "Total owed by businesses to Mrs. Cooper." Defendant shall have the right to prepay any or all of the unpaid balance at any time without penalty. The divorce decree also provided, in pertinent part: VII That the community property of the parties as shown on Exhibit "A" and divided thereon shall be credited out by the plaintiff and defendant executing such documents as may be necessary to make property allocated to them their sole and *31 separate estate. After the issuance of the divorce decree, Carpets, on July 9, 1965, executed three quitclaim deeds which transferred the Idaho property, the Los Camas property, and the Pinon Ridge lots to Betty. William, acting in his capacity as president of Carpets, signed these deeds on behalf of the corporation. On July 1, 1965, William, in his individual capacity, executed a promissory note in which he promised to pay the $59,728.83 [2] plus interest owed to Betty. The note provided: 9 For value received, I promise to pay to the order of BETTY L. COOPER at Albuquerque, New Mexico, the sum of Fifty nine thousand seven hundred twenty eight and 83/100 ($59,728.83) Dollars with interest from date until paid, at the rate of six per cent (6%) per annum, with ten per cent additional on amount unpaid, should this note be placed in the hands of an attorney for collection. This note is payable at the rate of $600.00 per month, including interest, commencing August 1, 1965, and this note is to be secured by the book value of outstanding stock equivalent to the unpaid principal balance on this note at all times, *32 until such time as this note is paid in full. At the time of the execution of this note, there is outstanding six hundred twenty four (624) shares of stock at a book value of $288.34 per share, and the pledge of stock securing this note shall be for 207 shares. In the event of sale of additional Treasury Stock, then the pledge will be increased to, at all times, secure Betty L. Cooper for her entire unpaid principal balance. The makers, endorsers, and sureties hereof hereby severally waive protest, demand, presentment notice of dishonor and notice of protest in case this note is not paid at maturity, and agree that after maturity of this obligation, the time of making payment of the same may be extended without prejudice to the holder and without releasing any maker, endorser, or surety hereof. The maker reserves the right to pay two or more installments at any time. William R. Cooper Also, on July 1, 1965, Betty executed an assignment to William of all her stock in Carpets and Service. This assignment provided: 10 STOCK ASSIGNMENT KNOW ALL MEN BY THESE PRESENTS: That I, BETTY L. COOPER, for value received, in consideration of the Final Order and Decree *33 in Case No. A 6092, Bernalillo County, New Mexico, filed June 25, 1965, in which the said Betty L. Cooper was granted an absolute divorce from William R. Cooper, and which settled and determined the property rights of the parties, do hereby assign and transfer unto WILLIAM R. COOPER all stock of every kind and nature in HOUSE OF CARPETS, INC., and HOUSE OF CARPETS SERVICE, INC., and hereby relinquish any and all rights, claims and interest in and to all stock of the HOUSE OF CARPETS SERVICE, INC., and HOUSE OF CARPETS, INC., and hereby assign and transfer unto WILLIAM R. COOPER all outstanding shares of the capital stock of the HOUSE OF CARPETS SERVICE, INC., and irrevocably constitute and appoint said WILLIAM R. COOPER attorney to transfer the said stock to the books of the within-named company with full power of substitution in the premises. Dated: July 1, 1965. Betty L. Cooper Finally, on July 1, 1965, William executed a pledge of stock for security purposes which stated: PLEDGE OF STOCK FOR SECURITY PURPOSES KNOW ALL MEN BY THESE PRESENTS: That I, WILLIAM R. COOPER, a single man, hereby transfer and assign to Betty L. Cooper, a single woman, all my right, title, *34 interest and equity in and to 207 shares of the capital stock of House of Carpets, Inc. as collateral security for my indebtedness to Betty L. Cooper in accordance with that certain Promissory Note of even date, which provides for the payment of $59,728.83. 11 In the event of sale of additional Treasury Stock, then the pledge will be increased to, at all times, secure Betty L. Cooper for her entire unpaid principal balance. William R. Cooper William's note secured by the pledge agreement was assigned by Betty to the Bank of New Mexico for collection, where the monthly payments on the note were made. At the end of its fiscal year 1965, a notes payable account to Betty in the amount of $33,752.99 was set up on the books of Carpets; a similar account in the amount of $25,740.62 was set up on the books of Service at the end of its fiscal year 1965. The monthly payments of $600 plus interest on the note executed by William to Betty have all been made by Carpets. A proportionate part of these payments were charged to Service through an intercompany account. Each corporation claimed a deduction for its proportionate share of the interest payments and each reduced its *35 note payable account to Betty Cooper by its allocable share of the principal that was paid. William had few, if any, assets other than the stock of the two corporations and the nonbusiness community assets assigned to Betty under the property settlement. William received a salary of $36,000 from Carpets in each of the years 1965-1967 and a salary of $3,600 from Service in 1966. 12 Under the divorce decree, custody of the two children, ages 13 and 11, was awarded to Betty and William was ordered to pay Betty $750 per month as child support, which amount was to be reduced if certain events occurred. At the time the settlement agreement was made and the order of the divorce court was entered, the stock certificates of the two corporations and their stock transfer books could not be found, and there was no actual transfer of any stock on the books of the corporations. [3] The by-laws of Carpets provide that transfers of stock of the corporation shall be made only on the books of the company. They also provide that if a stockholder wanted to sell or assign his stock, the corporation would have an option to purchase such stock. *36 In his notes made during a conference to discuss the settlement agreement, the attorney representing William made a notation at the bottom of a page listing the various community assets "Business to First redeem Betty's stock." ULTIMATE FINDINGS The payments made by the corporations to Betty during the years at issue were not made for redemption of any 13 interest she may have had in the stock of the corporation but were payments on an obligation of William to Betty. OPINION The issues for decision in these consolidated cases are whether Carpets and Service are entitled to deductions for interest paid to Betty in each of the years here involved, and whether the value of the payments made to Betty by the two corporations in cash and assets are taxable as dividends to William. In the notices of deficiency respondent determined that the payments made by the corporations to Betty were in discharge of an obligation from William to Betty and the value thereof, in the amounts of $31,126.62 [4] in 1965, $7,200 in 1966, and $7,200 in 1967, were taxable to William as dividends, and that that portion of the payments made to Betty allocated to interest, in the amounts of $1,462.34, *37 $1,889.82, and $1,759.43 by Carpets in its fiscal years 1966-1968, respectively, and in the amounts of $1,490.70, $1,390.56, and $1,284.20 by Service in its fiscal years 1966-1968, respectively, were not deductible by the corporations, but were deductible as interest paid by William in his appropriate tax years. 14 We affirm respondent's determinations. Our ultimate conclusion of fact that the payments made by the corporations to Betty were for the benefit of and in dischrage of an obligation from William to Betty is dispositive of both issues before us. It is clear under the case law that the payment of a taxpayer's indebtedness by a third party is income to the taxpayer, ; ; ; (C.A. 4, 1947); ; that payments of a stockholder's obligations by a corporation constitute *38 taxable dividends to the stockholder, (C.A. 8, 1966); ; , affd. (C.A. 8, 1963); , affirmed per curiam (C.A. 6, 1958), certiorari denied ; and, finally, that when a corporation discharges the obligation of another and not its own indebtedness, the corporation is not entitled to a deduction for the interest included in the payment. (C.A. 5, 1960); (C.A. 5, 1945); . 15 The stipulated facts and the evidence overwhelmingly support our conclusion that the obligation upon which Carpets made payments to Betty was that of William, not the corporations, and that the payments were not made to redeem Betty's stock. The obligation was incurred as part of a personal settlement agreement between William and Betty to divide equally between them their community property. *39 In order to retain all of the stock of the two corporations as his share of the community estate, it was necessary for William to give Betty a note for $59,493.61 to equalize the shares. The divorce court, in approving the settlement agreement, ordered William to make the payments on the balance due Betty even though the amount due was referred to on Exhibit A attached to the order as "Total owed by Businesses to Mrs. Cooper." Petitioners' claim that the payments were made in redemption of Betty's stock is contrary to the facts. All of the stock of the corporations was issued to and owned by William. There was no stock issued in Betty's name that could have been redeemed from Betty. The fact that as between themselves, Betty may have had a community interest in William's stock did not make any of the stock hers so far as the corporations were concerned. Furthermore, the actions taken in effectuating the settlement agreement confirm that there was no intent to redeem any 16 stock Betty may have owned. Betty assigned all interests she may have had in the stock to William. William gave Betty his personal note for $59,493.61. He assigned to Betty 207 shares of the stock of *40 Carpets as collateral security for his indebtedness to Betty. The 207 shares were not one-half of the total shares outstanding. There is no evidence that there has ever been a transfer of any stock on the corporate records nor any resolution of the directors of the corporations authorizing the redemption of stock from Betty or anyone else. The balance sheets which are a part of the corporate returns do not reflect any reduction in the capital stock. In addition, the $59,493.61 bears no relationship to the value of a one-half interest in the stock that Betty may have had because of the community property laws. The gross value of the two corporations was $231.408.15. The value of Betty's one-half community interest would be $115.704.07. The total value of the corporate assets distributed to Betty as a part of the settlement agreement was $28,126.62 which, if subtracted from the $115,704.07 figure, would leave a balance due Betty for her one-half interest in the amount of $87,577.45, rather than the $59,493.61 which the corporations undertook to pay Betty. 17 There is no sound evidence in the record to support the proposition that the payments made by the corporations to *41 Betty were in redemption of her stock. On the other hand, there is abundant evidence, as related above, that in both form and substance the payments were made in satisfaction of a personal obligation owing by William to Betty. Petitioners rely on the testimony of the attorneys who represented William and Betty in the divorce proceedings to the effect that it was the intention of the parties in the settlement agreement that the corporations would pay Betty the $59,493.61 in redemption of her stock - and they point to the notation made by William's attorney on the bottom of his conference notes, "Business to first redeem Betty's stock." However, the testimony of these witnesses failed to convincingly explain why Betty assigned her interest in the stock to William rather than the corporations, why the proper steps were not taken by the corporations to redeem any stock, and why the corporations should pay Betty $59,493.61, which was a balancing figure to equalize the community property distributed to William, but had no relationship to the value of a one-half interest in the corporations. 18 Nor does the fact that the payments were made by Carpets add any weight to petitioners' *42 argument. It was fairly apparent that the $600 payments William was ordered to make to Betty would have to originate with the corporations because after the divorce William had no other source of revenue. William had complete control of the corporations and it was easy enough for him to have the corporations make the payments direct to Betty, and much more advantageous taxwise if it was done that way in the guise of a redemption of Betty's stock. And the fact that under their by-laws the corporations had the option to purchase any stock sold by a stockholder, does not support petitioner's contention that the payments were to redeem Betty's stock. There is no evidence that the corporations exercised the options or that any stock was sold. Petitioners rely on , as supporting their argument. In that case the majority stockholder of a corporation wanted to dispose of his entire interest in the corporation. The minority stockholder offered to buy a part of his shares, but was unable financially to buy all of them. This was unacceptable to the majority stockholder, who suggested that the corporation redeem his stock. This was arranged, *43 but the majority stockholder insisted that the transaction take 19 the form of a sale of his stock to the minority stockholder with the corporation then redeeming the stock. The corporation obtained a loan to redeem the stock, but the transaction took the paper form insisted upon by the majority stockholder. In concluding that the redemption was not essentially equivalent to a dividend to the minority stockholder, this Court found that the substance of the transaction was a redemption of the majority stockholder's stock directly from him and that the minority stockholder was simply a momentary conduit of the stock from the majority stockholder to the corporation. Our conclusion was based primarily on the facts that the taxpayer had no obligation to pay for the stock and did not personally acquire beneficial ownership of the stock, and that in supplying the funds to redeem the stock, the corporation did not discharge an obligation of the taxpayer because he never obligated himself personally to purchase the stock. We distinguished , wherein the taxpayer in one transaction acquired stock, paid an amount in cash and obligated himself to pay *44 additional amounts, and in a separate transaction the corporation paid his notes. We think the facts in this case more closely fit the pattern of Wall than they do the pattern of Bennett, and that Bennett is distinguishable. Here, the obligation discharged was clearly an obligation of petitioner. The transaction 20 might have been arranged in a different manner that would have had more favorable tax consequences to petitioners herein, but either the petitioners or the divorce court chose the form the transaction was to take, and petitioners are bound by it. We hold that the payments made to Betty by the corporations are taxable as dividends to William. Also, since the corporations were discharging the obligation of William and not their own indebtedness, they are not entitled to deductions for the interest they paid on the note. Since petitioners have conceded all other adjustments made by respondent in the notices of deficiency, Decisions will be entered for respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: House of Carpets-Service, Inc., docket No. 808-71; William R. Cooper, docket No. 809-71; and William R. Cooper and Betty L. Cooper, docket No. 835-71. ↩
*. Title to these properties was apparently in the corporations, although there may be some doubt about where title to the Lots Pinon Ridge reposed, which is unimportant in deciding this case. ↩
2. The discrepancy in these figures is not explained. ↩
3. Apparently these records were still missing at the time of trial of this case, at least no evidence with respect thereto was offered at trial. ↩
4. This included the value of the corporate assets that were assigned to Betty in the settlement agreement and divorce decree. ↩